# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ADRIENNE MOSS, as administrator of the Estate of Montrell Moss, deceased, and SHIMEKA ROBINSON,<br>　　　Plaintiffs, | )<br>)<br>)<br>)<br>) | Case No. 14 C 6424 |
| v. | )<br>) | Judge Joan B. Gottschall |
| EDGAR SINGLETON, JR., TOM DART, COOK COUNTY SHERIFF'S OFFICE, and COOK COUNTY,<br>　　　Defendants. | )<br>)<br>)<br>)<br>) | |

## MEMORANDUM OPINION AND ORDER

On August 8, 2013, off-duty Cook County correctional officer Edgar Singleton, who was wearing his work uniform and carrying a work-issued gun, fatally shot twenty-three year old Montrell Moss after the two men exchanged words through the open windows of their vehicles while stopped at a traffic light in Hammond, Indiana. Adrienne Moss (Moss' mother and the administrator of his estate) and Shimeka Robinson (who was in the passenger seat of Moss' car when he was shot) filed this action asserting federal and state law claims arising from Moss' death against Singleton, Cook County Sheriff Tom Dart, the Cook County Sheriff's Office, and Cook County. Singleton and the Cook County defendants have filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, the motions are granted in part and denied in part.

## I. BACKGROUND[1]

In August 2013, defendant Edgar Singleton was employed as a Cook County correctional officer. In this capacity, he was authorized to carry a Glock semi-automatic pistol and "utilize that firearm in the enforcement of the law." (Compl. ¶ 3, Dkt. 1-1.) Defendant Tom Dart, who has been sued in his official capacity, is the Cook County Sheriff. He is responsible for operating the Cook County Department of Corrections, where Singleton worked, as well as the Cook County Sheriff's Office, which is also named as a defendant in this case. Defendant Cook County has financial responsibility for the obligations of the Cook County Department of Corrections and the Cook County Sheriff's Office.

On August 8, 2013, at approximately 8:00 p.m., Singleton and Moss were operating vehicles in the vicinity of the 1000 block of Indianapolis Boulevard.[2] Plaintiff Shimeka Robinson was traveling in Moss' car in the front passenger seat, and both were unarmed.

---

[1] The following facts are drawn from the plaintiffs' complaint (which the defendants removed from the Circuit Court of Cook County) and are accepted as true for the purpose of the defendants' motion to dismiss. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). Both sides submitted excerpts from Singleton's trial testimony in support of, or in opposition to, the motions to dismiss. The court declines to take judicial notice of the transcripts to determine what happened on the day of Moss' death. *See Hyung Seok Koh v. Graf*, No. 11-CV-02605, 2013 WL 5348326, at *8 (N.D. Ill. Sept. 24, 2013) (holding that it is improper to take judicial notice of state court transcripts that contain disputed facts when deciding a motion to dismiss). The court, however, will take judicial notice of the fact that following a jury trial in Indiana state court, Singleton was found guilty of murdering Moss and sentenced to a fifty-year term of imprisonment. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013) (the court may "take judicial notice of documents that are part of the public record, including pleadings, orders, and transcripts").

[2] The complaint does not specify a city or state. The court takes judicial notice that the 1000 block of Indianapolis Boulevard is located in Hammond, Indiana. *See Central Green Co. v. United States*, 531 U.S. 425, 435 (2001) (taking judicial notice of "basic" geographical facts).

Singleton was wearing a Cook County Sheriff's Office Department of Corrections uniform and was armed with his Cook County Sheriff's Office-issued gun. According to the plaintiffs, on the day of the shooting, Singleton was "acting under color of law, ordinance, and statute." (*Id*. ¶ 6.)

After Singleton cut Moss off by driving in front of Moss' vehicle, the cars stopped at a traffic signal. The two men "exchanged words" through the open windows of their cars. (*Id*. ¶ 11.) Moss "perceived a threat to his safety and that of the public he was sworn to protect; so, while acting to enforce the law, he drew his Sheriff-issued sidearm and fired a single shot" towards Moss and Robinson. (*Id*.) The bullet struck Moss in the neck; Robinson was uninjured. Singleton then pointed his gun towards Moss and Robinson again but did not open fire. Moss did not survive.

In their seven-count complaint, the plaintiffs allege the following claims:

| *Count* | *Claim* | *Brought By* | *Brought Against* |
|---|---|---|---|
| I | Illinois Wrongful Death Act | Adrienne Moss | Singleton |
| II | Illinois Survival Act | Adrienne Moss & Robinson | Singleton |
| III | Illinois Wrongful Death Act | Adrienne Moss | Dart, the Cook County Sheriff's Office & Cook County |
| IV | Illinois Survival Act | Adrienne Moss & Robinson | Dart, the Cook County Sheriff's Office & Cook County |
| V | § 1983 – Excessive Force | Adrienne Moss & Robinson | Singleton |
| VI | § 1983 – "Battery" | Adrienne Moss & Robinson | Singleton |
| VII | Indemnification | Adrienne Moss & Robinson | Cook County |

## II. STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## III. DISCUSSION

Singleton seeks to dismiss the § 1983 claims against him (Counts V and VI, brought by both plaintiffs based on the alleged use of excessive force and Singleton's "battery"). In the Cook County defendants' motion to dismiss, they argue that: (1) the Sheriff's Office is not a proper party because the plaintiff sued Dart in his official capacity, which equates to a claim against the Sheriff's Office; (2) Cook County cannot be held liable for the actions of the Sheriff of Cook County under a theory of respondeat superior; (3) Robinson lacks standing to pursue a Survival Act claim; (4) the claims against Dart fail to state a claim because the complaint does not adequately allege that Singleton acted under color of state law or that he was acting within the scope of his employment when he shot and killed Moss; and (5) the indemnification claim

against Cook County should be dismissed since the plaintiffs have failed to state a claim against Dart or Singleton.

**A.      Claims Against the Cook County Sheriff's Office**

In their motion to dismiss, the Cook County defendants argue that the claims against the Sheriff's Office duplicate the official capacity claims against Dart, who was sued in his official capacity. "Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Thus, claims against the Cook County Sheriff's Office and Dart are "really a suit against the office of the Cook County Sheriff, who has statutory responsibility for operating the [Cook County] Jail." *Hudson v. Preckwinkle*, No. 13 C 8752, 2015 WL 1541787, at *5 (N.D. Ill. Mar. 31, 2015) (citing 55 Ill. Comp. Stat. § 5-3-15003). The plaintiffs' response to the motion to dismiss does not address the defendants' arguments about the Cook County Sheriff's Office. As a claim against the Cook County Sheriff's Office duplicates the official capacity claim against Dart, the claims against the Cook County Sheriff's Office are dismissed.

**B.      Respondeat Superior Claims Against Cook County**

Counts III (Illinois Wrongful Death Act) and IV (Illinois Survival Act) both contain allegations that defendant Cook County is liable for Moss' death based on Singleton's actions. The defendants seek to dismiss any respondeat superior claim against Cook County, arguing that Cook County cannot be held liable for the actions of the Sheriff of Cook County under this theory. This is correct, *Franklin v. Zaruba*, 150 F.3d 682, 685-86 (7th Cir. 1998) (citing *Moy v. Cnty. of Cook*, 640 N.E.2d 926, 929 (Ill. 1994)), and the plaintiffs do not respond to this portion

of the motion to dismiss. Accordingly, to the extent that the plaintiffs wish to proceed with any respondeat superior claims against Cook County, they may not do so.

**C.      Robinson's Survival Act Claim (Counts II and IV)**

In Count IV, both plaintiffs assert a claim pursuant to the Illinois Survival Act, 755 Ill. Comp. Stat § 5/27-6. Only an administrator or an executor of a decedent's estate can pursue an action under the Illinois Survival Act. *Cushing v. Greyhound Lines, Inc.*, 965 N.E.2d 1215, 1233 (Ill. App. 2012). Adrienne Moss is the administrator of Moss' estate. Robinson does not allege that she is a co-administrator or the executor of Moss' estate or oppose this portion of the defendants' motion to dismiss. Her Survival Act claim against the Cook County defendants is dismissed.[3]

In the interests of completeness, the court notes that Count II asserts a Survival Act claim against Singleton on behalf of Adrienne Moss and Robinson. Singleton's motion to dismiss does not raise Robinson's standing to pursue a Survival Act claim against him, but that claim appears to fail for the same reason that Robinson's Survival Act claim against the Cook County defendants fails. Thus, Robinson's Survival Act claim against Singleton is dismissed. The dismissal will be without prejudice in the event that Robinson wishes to amend her complaint to demonstrate why she has standing to pursue a Survival Act claim against Singleton.

---

[3] The defendants argue that any claim brought by Robinson under the Illinois Wrongful Death Act, 740 Ill. Comp. Stat. § 180/1, *et seq.*, fails for the same reason that Robinson's Survival Act claim fails. Robinson does not appear to be asserting a Wrongful Death Act claim. Thus, the court will not address whether she can pursue a claim under the Wrongful Death Act.

**D.      Section 1983 Claims Against Singleton (Counts V and VI)**

Section 1983 provides a cause of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Thus, to be liable under 42 U.S.C. § 1983, a defendant must have (a) violated a constitutional right while (b) acting under color of state law. *See*, *e.g.*, *Parker v. Franklin Cnty. Cmty. Sch. Corp.*, 667 F.3d 910, 925 (7th Cir. 2012).

      **1.      § 1983 "Battery" Claim (Count VI)**

Unquestionably, a claim of excessive force arises under the Fourth Amendment and thus is actionable under § 1983. *See*, *e.g.*, *Miller v. Gonzalez*, 761 F.3d 822, 825 (7th Cir. 2014). In Count V, both plaintiffs contend that Singleton used excessive force when shooting Moss. It is unclear how their § 1983 claim of "battery" in Count VI differs from their Fourth Amendment excessive force claim or how it is actionable as a separate claim under the United States Constitution. Accordingly, the battery claim (Count VI) is dismissed without prejudice and with leave to amend. Any amended complaint must delineate the basis for a stand-alone constitutional claim of battery, as distinguished from a Fourth Amendment claim of excessive force.

      **2.      "Under Color of State Law" (Count V)**

As the Seventh Circuit has explained:

> Not every action by a state official or employee is to be deemed as occurring 'under color' of state law," *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989); rather, action is taken under color of state law "when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law," *Honaker v. Smith*, 256 F.3d 477, 484-85 (7th Cir. 2001). The mere assertion that one is a state officer does

> not necessarily mean that one acts under color of state law. *Askew v. Bloemker*, 548 F.2d 673, 677 (7th Cir. 1976). A state officer's conduct does not constitute acting under color of state law unless it is "related in some way to the performance of the duties of the state office." *Honaker*, 256 F.3d at 485.

*Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010). Moreover, if an official lacks authority to act, his actions are not taken "under color of state law, as one cannot misuse power one does not possess." *Id*. at 393.

Singleton contends that the complaint fails to allege that he was acting under color of state law because he was a Cook County correctional officer at the time of the shooting, the shooting took place in Hammond, Indiana, and the facts in the complaint do not support an inference that he was acting within the scope of his employment. Although these arguments overlap to some degree, the court will discuss them separately.

### a. "Under Color of State Law" – Singleton's Status as a Correctional Officer

Singleton argues that he could not have been acting under color of state law at the time of the shooting because Cook County correctional officers do not have police powers outside the workplace. Thus, he asserts that when he shot Moss, he was acting as a private citizen, not a County employee. In support, he directs the court's attention to *Arrington v. City of Chicago*, 259 N.E.2d 22, 24 (Ill. 1970). In that case, the Illinois Supreme Court held that "jail guards have no general powers to arrest or maintain order" outside the jail. *Id*.

*Arrington*, however, also drew a distinction between "peace officers, who may carry arms at any time, and prison keepers and others like themselves who are permitted to carry arms only in the performance of their duties and when commuting to and from their place of work." *Id*. The plaintiffs allege that at the time of the shooting, Singleton was outside the environs of the

Cook County Jail and that he was authorized to carry a loaded County-issued gun and to wear a Cook County Department of Corrections uniform. The court declines to rely on a 1970 Illinois Supreme Court case to find – at the motion to dismiss stage – that despite the complaint's allegations, Singleton was allowed to carry his County-issued gun only while he was working at, and commuting to and from, the Cook County Jail.

### b. "Under Color of State Law" – the Location of the Shooting

Singleton also stresses that the shooting took place in Hammond, Indiana. He reasons that even if he had a duty to maintain public safety outside the Cook County Jail (which he denies), that authority could not have authorized him to act outside of Cook County and certainly could not have authorized him to act outside of the State of Illinois. But an individual whose actions exceed his authority can nevertheless act under color of state law if he "purports to be acting under color of official right." *Wilson*, 624 F.3d at 394 (quoting *Lopez v. Vanderwater*, 620 F.2d 1229, 1236 (7th Cir. 1980)). Thus, a public official's ultra vires actions can be actionable under § 1983 if they occurred while he was "attempt[ing] to cloak himself in his authority" during a confrontation. *Id.*

For example, in *Wilson*, an alderman beat an employee of an automobile repair shop because he was distressed by reports of illegal parking by the shop. The Seventh Circuit affirmed the dismissal of the plaintiff's § 1983 claims because the plaintiff did not allege that the alderman invoked his office or identified himself as an alderman before using the allegedly excessive force. *Id.* (citing *Pickrel v. City of Springfield, Ill.*, 45 F.3d 1115, 1118 (7th Cir. 1995)). In contrast, in *Pickrel*, the Seventh Circuit found that an off-duty police officer who physically attacked the plaintiff at a restaurant could have been acting under color of state law

because he was wearing his police uniform, displaying his badge, wearing his gun so he could enforce his authority, and had parked his marked squad car outside the restaurant. *Id*.

"Deciding whether a police officer acted under color of state law should turn largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties." *Id*. The plaintiffs have sketched the events preceding the shooting using broad strokes, as they are entitled to do. The plaintiffs allege that Singleton was wearing his full Cook County Department of Corrections uniform in public "with a loaded pistol at the ready" that was provided by the County, and that he fatally shot Moss in a manner that was "not the typical behavior of a run-of-the-mill citizen." (Pl.'s Resp. at 7, Dkt. 24.) The plaintiffs also allege that the Cook County Sheriff's Office allowed Singleton to wear his uniform and carry a loaded County-issued gun outside the Cook County Jail. The uniform presumably distinguishes him from a member of the public, and members of the public do not carry loaded service weapons issued by the Cook County Sheriff's Office.

Moreover, in their response to the motion to dismiss, the plaintiffs specifically assert that at the time *and place* of the shooting**,** Singleton was authorized to wear his full uniform and carry a loaded County-issued gun.[4] (*Id*.) Discovery is necessary to flesh out the details of what happened and determine if Singleton purported to be "acting under color of official right" when he shot Moss in Hammond, Indiana. *See Wilson*, 624 F.3d at 394. But for now, the allegations

---

[4] These assertions are properly before the court even though they appear in the response to the motion to dismiss. *See, e.g.*, *Palan v. Commonwealth Edison Co.*, No. 14 C 7940, 2015 WL 1911104, at *1 (N.D. Ill. Apr. 27, 2015) (the court may consider additional facts in a plaintiff's brief opposing dismissal if they "are consistent with the pleadings") (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)).

in the complaint are sufficient to survive Singleton's motion to dismiss based on § 1983's "under color of state law" requirement, despite the fact that the shooting took place in Hammond, Indiana. *See Marquez v. Jackson*, No. 13 C 3278, 2013 WL 6797165, at *2-3 (N.D. Ill. Dec. 23, 2013).

        c.        **"Under Color of State Law" – Scope of Employment**[5]

An action can be taken under color of state law if it is related to the performance of the officer's official duties. *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007). An action taken "in furtherance of [an officer's] personal interests" is, therefore, outside the ambit of § 1983. *Id*; *see also Chaparro v. City of Chicago*, 47 F. Supp. 3d 767, 780 (N.D. Ill. 2014) (collecting cases holding that an officer's actions are not taken under color of state law unless they are related to the performance of official duties). Nevertheless, as noted above, "[w]hether a particular action was under color of state law depends largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties." *Estate of Sims*, 506 F.3d at 516. This means that an officer can act under color of state law even if he is off-duty. *See United States v. Christian*, 342 F.3d 744, 751 (7th Cir. 2003) (noting that an off-duty officer who is wearing a uniform and displaying a badge can act under color of state law).

The plaintiffs generally allege that Singleton used force to "enforce the law" after "perceiv[ing] a threat to his safety and that of the public he was sworn to protect." (Compl. ¶ 11,

---

[5] Both Singleton and Dart raise arguments about scope of employment in their separate motions to dismiss. The arguments differ and arise in the context of federal law (the § 1983 excessive force claim against Singleton) and state law (Illinois' Wrongful Death and Survival Acts). Thus, the court will address them separately.

Dkt. 1-1.) In their response to the motion to dismiss, the plaintiffs also assert that Moss yelled "bitch ass officer" to Singleton shortly before Singleton opened fire. (Resp. at 8, Dkt. 24.) *See Palan*, 2015 WL 1911104, at *1.

In contrast, Singleton argues that he could not possibly have been acting in his capacity as a Cook County Department of Corrections employee since the complaint's allegations show that as the time of the shooting, he:

- was off duty in Hammond, Indiana, far outside the limits of Cook County, Illinois, and any authority he possessed by virtue of his employment;

- had just had an argument with Moss that could not have had any relationship to his employment since it was about how Singleton had driven his personal vehicle; and

- discharged his gun solely based on concerns about his personal safety.

It is well established that the court cannot choose among competing factual allegations at the motion to dismiss stage. *See*, *e.g.*, *Network Cargo Sys. Int'l, Inc. v. Pappas*, No. 13 C 9171, 2014 WL 1674650, at *4 (N.D. Ill. Apr. 25, 2014). In considering the parties' arguments about scope of employment in the context of § 1983's "under color of state law" requirement, the court finds the decision in *Marquez* instructive.

In *Marquez*, the plaintiff and the defendant (an officer employed by the United States Department of Veterans Affairs) were driving their cars in Chicago, Illinois. According to the plaintiff, the defendant officer – who was a federal employee, not a City of Chicago police officer – repeatedly crashed into the plaintiff's car. The plaintiff confronted the defendant, who "identified himself as a cop, took out a gun, . . . pointed it at [the plaintiff's] head," and shoved the plaintiff repeatedly. *Marquez*, 2013 WL 6797165, at *1. The court held that these allegations satisfied the "under color of state law" requirement, explaining:

> The facts alleged in the amended complaint are that Defendant Jackson crashed his car into Plaintiff's car multiple times and then confronted Plaintiff with a gun while identifying himself as a police officer. Although Plaintiff does not allege that Defendant Jackson was on duty at the time or engaged in the performance of official acts, that fact can be inferred from the allegation that Jackson identified himself as a police officer. While discovery should shed light on whether it was a service revolver or Jackson's personal gun, whether Jackson was dressed as an officer and driving a police vehicle, whether Jackson was on duty at the time of the encounter, *and the specific acts that Jackson allegedly engaged in (and whether those actions related in some way to the performance of a police duty)*, at this stage, Plaintiff's complaint sufficiently alleges that Defendant Jackson was acting under color of state law.

*Id*. at *2 (emphasis added).

In light of the plaintiffs' assertion that Moss yelled "bitch ass officer" to Singleton before he was fatally shot, and reading the complaint in the light most favorable to the plaintiffs, the plaintiffs have alleged that Moss believed that Singleton was a law enforcement officer, the confrontation between the two men involved Moss' status as an officer, the shooting was motivated by, among other things, a desire to protect the public, Singleton had a duty to refrain from engaging in reckless conduct, and Singleton acted like a police officer when he shot Moss with his County-issued gun wearing his County uniform. These allegations support an inference that Singleton's actions "related in some way to the performance of a police duty." *See id*.

Singleton's argument that, as a matter of common sense, he could not have been acting within the scope of his employment given the time and place of the shooting is, therefore, a non-starter at the motion to dismiss stage. At this stage of the proceedings, the court cannot reject the plaintiffs' allegation that Singleton used force to "enforce the law" to promote the safety "of the public he was sworn to protect" merely because Singleton was a Cook County Department of Corrections Officer who used force in Hammond, Indiana. (Compl. ¶ 11, Dkt. 1-1.) Discovery may belie the plaintiffs' claim that Singleton was acting within the scope of his employment

-13-

when he shot Moss. But because this issue, in the context of § 1983, is not susceptible to resolution now, the court finds that the complaint sufficiently alleges that Singleton shot Moss while acting under color of state law.

### 4. Respondeat Superior Claim Against Dart Based on Singleton's Actions (Count III and IV)

Based on the dismissal of Robinson from Count IV, the remaining claims against Dart are brought by Adrienne Moss pursuant to Illinois' Wrongful Death and Survival Acts (Counts III and IV, respectively), and are based on respondeat superior. Dart may be held liable for Singleton's actions under a state law respondeat superior theory if Singleton's shooting of Moss was within the scope of Singleton's employment.[6] Under Illinois law, "[t]hree criteria must be satisfied in order to establish that conduct was within the scope of employment: (1) it is of the kind he is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the master."[7] *DeBacker v. City of Moline*, No. 13-4062, 2015 WL 351664, at *12 (C.D. Ill. Jan. 27, 2015) (applying Illinois law) (citing Restatement (Second) of Agency § 228 (1958); *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 992 (Ill. 2007)).

The plaintiffs' response brief does not address Dart's arguments about the three elements necessary to allege that Dart is liable based on respondeat superior because Singleton shot Moss

---

[6] The court notes that Dart may not be held liable for Singleton's actions under § 1983 based on a respondeat superior theory because § 1983 requires personal action. *See*, *e.g.*, *Vinson v. Vermilion Cnty., Illinois*, 776 F.3d 924, 928 n.1 (7th Cir. 2015).

[7] The parties do not address this test in the context of the plaintiffs' § 1983 claim against Singleton. Thus, the court will confine its discussion of the test to the state law claims against Dart based on Singleton's actions.

within the scope of his employment as a Cook County correctional officer. The closest the plaintiffs get to discussing Dart's arguments about the scope of Singleton's employment is their contention that the court should deny the motion to dismiss and allow discovery to proceed so they can flesh out their position regarding scope of employment. (Pls.' Resp. at 4-5, Dkt. 24.) However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" so if a plaintiff is "armed with nothing more than conclusions," he is not entitled to discovery to attempt to discover facts that might support his claim. *Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2010 WL 1979569, at *6 (N.D. Ill. May 17, 2010) (citing *Twombly*, 550 U.S. at 570); *see also Iqbal*, 129 S.Ct. at 1949 ("a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

In sum, the complaint does not appear to include any facts that track the three-element test and the plaintiffs' response brief does not elucidate the basis of the respondeat superior claim against Dart, which requires Singleton to have been acting within the scope of his employment at the time of the shooting. Accordingly, the respondeat superior claims against Dart in Counts II and IV are dismissed without prejudice and with leave to replead.

        **5.**      **Count VII (Indemnification Against Cook County)**

State law requires Cook County to pay judgments entered against Dart and his deputies if they were acting under color of state law and within the scope of their employment. *See Askew v. Sheriff of Cook Cnty.*, 568 F.3d 632, 636 (7th Cir. 2009); 55 Ill. Com. Stat. § 5/5-1002. The court has denied Singleton's motion to dismiss the § 1983 excessive force claim against him and

granted Adrienne Moss leave to replead her respondeat superior state law claims against Dart. Thus, it declines to dismiss the indemnification claim against Cook County at this time.

**IV. CONCLUSION**

Singleton's motion to dismiss the § 1983 claims against him [16] is granted in part and denied in part. The plaintiffs may proceed with their excessive force claim against Singleton (Count V) but their § 1983 "battery" claim (Count VI) is dismissed without prejudice and with leave to amend. Any amended complaint must delineate the basis for a stand-alone constitutional claim of battery, as distinguished from a Fourth Amendment claim of excessive force. Robinson's Survival Act claim against Singleton (a portion of Count II) is dismissed without prejudice.

The Cook County defendants' motion to dismiss [20] is granted in part and denied in part. The claims against the Sheriff's Office in Counts III and IV are dismissed as duplicative of the official capacity claims against Dart. The claims against Cook County in Counts III and IV are dismissed as Cook County cannot be held liable for the actions of the Sheriff of Cook County under a theory of respondeat superior. Robinson's Survival Act claim against Dart (Count IV) is dismissed. The state law claims against Dart (Counts III and IV) are dismissed with leave to replead. Finally, the court declines to dismiss the indemnification claim against Cook County at this time. The plaintiffs must file an amended complaint, or advise the court that they do not intend to do so, by July 10, 2015. A status hearing is set for July 15, 2015 at 9:30 a.m.

Date: June 18, 2015          /s/
                   Joan B. Gottschall
                   United States District Judge